## SINGLETON *et al. v.* MARSHALL; *et vice versa.*

There being some evidence to support the verdict in this case, the judgment refusing the motion for a new trial based upon the usual general grounds will not be disturbed here.

Nos. 1716, 1717. MAY 17, 1920.

Partition. Before Judge Park. Putnam superior court. September 17, 1919.

*Davidson & Callaway,* for Singleton et al.

*Roy D. Stubbs* and *S. T. Wingfield,* contra.

Beck, P. J.   This case arose upon the issue made by a caveat to an application for partition filed by Mrs. Mary S. Marshall, in which she alleged that she and T. W. Singleton and Philip Singleton, or the grantee of the latter, Mrs. Carrie Singleton, were tenants in common of a certain described tract of land.   The applicant and T. W. and Philip Singleton had been tenants in common of a larger tract of land in which was included the small tract of 25 acres in regard to which the controversy arose.   The evidence in the case raised a controlling issue, that is, whether, in order to effect a division of a larger tract of land which had been divided into three tracts of a little over 300 acres each and a fourth tract of 25 acres, the applicant for partition had agreed that if the defendant Philip Singleton would execute a deed conveying his interest in two of the larger tracts in consideration of the other two defendants conveying their joint interest in the third one of the larger tracts, Mrs. Marshall "would give her interest in the 25 acres of land to this defendant."   And it is further averred that Philip Singleton agreed to this proposition, and that the reciprocal deeds were duly executed.   None of the three deeds referred to the agreement upon the part of Mrs. Marshall "to give her interest in the 25-acre tract."   The alleged agreement as to the 25-acre tract rested in parol, but it is averred that Philip Singleton went into possession of that tract under the agreement. Upon the trial of the application and the issue made by the answer thereto, there was evidence tending to show that Mrs. Marshall had made the agreement alleged, but Mrs. Marshall denied making this agreement, and upon the trial of this issue the jury found in favor of the applicant, and the losing party made a motion for a new trial.   This motion was based upon the usual general grounds that the verdict was contrary to evidence, etc.   It was overruled.

It is apparent that there is some evidence to support the finding of the jury.   Mrs. Marshall herself testified in part as follows: "I didn't know that I had drawn the home lot until then [the time when the deeds were executed].   Not a thing was said prior to this award and division about this 25 acres of land [the land in controversy] by either Philip [Singleton], Terrell, or myself.   It was left out of the division, and instead of it being three parts, that made the fourth part and it was to be divided some time afterwards.   Nothing was said to me by Philip or Terrell prior to the

division or at the division about giving my undivided interest in that land. After the division Philip Singleton only asked me to let him use the grass off of it, and as it was undivided I didn't care, I had plenty of grass, and I told him he could use the grass off my part of it, provided, of course, I didn't know what my part was, but my interest there in it, and I consented to let him use the grass off the bottom. I told him he could have the use of it for his lifetime. But when he gave the other part of the property to his wife, that was several years afterwards. It was at the time he gave the land to his wife, which was somewhere in 1914. I never offered to let him [have or use] any part of this land as an induce- ment to enter into this division. After the division I told him he could use the land his lifetime, and after his death it was to go back to me; it was outside of the division altogether. His use of the land was by my consent. Philip Singleton knew it was his land to use his lifetime, but he didn't know it was his absolutely, and never claimed it — he wanted the grass out of it. He never made claim to it to me. I thought all these — he had only the right to use it for his lifetime, and I thought he understood it, and he did understand it. He never claimed that land belonged to him. I never took any part in the division of the land in question; it was done when I wasn't at home, and I didn't know Philip and Terrell ever divided it between themselves; it was done without my knowl- edge and consent. I found out about the division of the bottom about a year or two after it was done. I didn't undertake to have it prorated then. I have given the use of my part of the land to Philip Singleton his lifetime. Philip and Terrell didn't consult me about the division. The land was mine. I knew Philip was using the proceeds off of it. I knew Terrell was using his one third; I didn't know it was his. I knew the land was used before this proceeding — Philip used his. I never gave Philip the right to put a plow in it, but I knew it was done. I didn't tell him he could have it as his own. I didn't know until a long time after the division between Terrell and Philip. . . Philip had the use of the land, but he understood it was mine. He never paid taxes on it; nobody did." There was other evidence tending to corrobo- rate the testimony of Mrs. Marshall. There was also evidence tending to support the contentions of the defendant Philip Single- ton.

It is not for this court to decide as to the party in whose favor there was a preponderance of the evidence. Under that evidence the jury were authorized to find that Mrs. Marshall had merely given to Philip Singleton the right to use the grass growing upon a part of the 25-acre tract of land. She says distinctly that she did not give him the property, that he was not to put a plow into it, but that she did consent for him to use it, and described the interest which he was to have—the right to use the grass. Taking this testimony as true, it being conceded that but for this alleged agreement with Philip she was entitled to one third of the land in severalty, she was entitled to a partition setting apart that one third; and it is not necessary to decide the question as to whether or not the oral agreement which Philip Singleton in his answer avers was made would have vested him with the title to land had his contention been sustained in passing upon the evidence. It follows from what is said above that the judgment of the trial court refusing a new trial will not be disturbed.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. All the Justices concur.*